IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN RUCKER,

        Petitioner,               No. CIV S-08-1856 FCD CHS P

    vs.

D.K. SISTO, Warden,

        Respondent.      FINDINGS AND RECOMMENDATIONS

_____/

## I.  INTRODUCTION

Petitioner Steven Rucker is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.  Petitioner is currently serving an indeterminate sentence of 27 years to life following his 1982 conviction for first degree murder with use of a firearm in Butte County, case number BUT-77896.  The pending petition challenges the execution of that sentence, and specifically, the October 19, 2007 decision of the Board of Parole Hearings that petitioner was not suitable for parole.

## II.  BACKGROUND

The facts of petitioner's life crime were summarized in a psychological evaluation prepared for the parole suitability hearing at issue:

/////

1

> According to Oroville Police Department, on March 24, 1982, Rucker's wife Lois became involved in an argument with Alice Cocking (the victim), after Rucker had stopped at a 7-11 Market on Oro Dam Boulevard in Oroville, California, to do some shopping. Rucker was in the store shopping when the argument between his wife, Lois, and Mrs. Cocking started.  When Rucker exited the market, he tried to stop the argument and separated the two women.  Charles Mortensen stated that when Rucker tried to separate the combatants, he started to pull out what appeared to Mortensen to be a gun.  Mortensen pulled a knife and told Rucker he would stab him if he pulled a gun.  At that point, Rucker departed telling Mortensen he would be back in 10 minutes. Approximately 10 minutes later Rucker returned [in] his car, which was occupied by the same people, Rucker's wife Lois, and Brian and Shelly Dial.  The argument between Lois Rucker and Alice Cocking resumed.  At that time, the store clerk called the police. When police arrived, Rucker and his passengers left the parking lot.
>
> Mortensen stated that after the police left, he and Alice Cocking drove his motorcycle to the intersection of Stanford and Argonaut Avenues and stopped at the stop sign.  Rucker's vehicle pulled along side of [the] motorcycle, a shot rang out, and Alice Cocking was killed by a single shotgun blast to the head.

(Resp. Ex. 1.)  At his psychological evaluation, petitioner indicated that he had just been hired as a welder on the date of the offense after several months of unemployment.  He and the other occupants of the car had been out celebrating, and he was under the influence of alcohol and drugs.  (*Id*.)  Petitioner further indicated that he was not lying in wait for Mortenson and the victim to come by, but rather, their paths crossed again by accident.  *Id*.  Petitioner stated that he did not mean to kill the victim, but rather, only intended to shoot Mortenson in the knee.  (*Id*.)

Petitioner was found guilty by jury of first degree murder with use of a firearm. He was sentenced to an indeterminate term of 27 years to life, with the possibility of parole.  His minimum eligible parole date passed on January 17, 1999.

On October 19, 2007, a panel of the Board of Parole Hearings ("Board") conducted a subsequent hearing to determine petitioner's suitability for parole.  After evaluating the positive and negative factors for petitioner's release, the panel determined that petitioner would pose an unreasonable risk of danger to society, and thus that he was not suitable for

1   parole. (BPHT at 99.[1])  Petitioner sought habeas corpus relief in the Butte County Superior

2   Court; his petition was denied in a form order with additional language stating "The Court finds

3   the decision of the Parole Board to deny parole was supported by sufficient evidence." (Resp.

4   Ex. 2.).  The California Court of Appeal, Third District, denied petitioner's claim without written

5   opinion (Resp. Ex. 4) and the California Supreme Court denied review  (Resp. Ex. 2.)

III.  ISSUES PRESENTED

7          Petitioner claims, generally, that the Board determined he was unsuitable for

8   parole in the absence of any valid, reliable supporting evidence in the record.  The petition sets

9   forth six separate issues regarding whether the Board's decision comported with due process.

10   Petitioner asserts that (1) the board improperly relied on the unchanging factors of his

11   commitment offense; (2) the unchanging factors of his commitment offense do not justify denial

12   of parole; (3) no reliable evidence indicates that he has not sufficiently participated in self-help

13   therapy and/or Alcoholics Anonymous; (4) his parole plans were not a valid basis for denial; (5)

14   the opposition of the District Attorney and/or victim's family is irrelevant to the determination;

15   and (6) the Board improperly relied on his prison disciplinary history as a negative factor where

16   he had been free of any discipline for nearly 15 years.

---

[1] All citations to BPHT refer to the transcript of the October 19, 2007 parole suitability hearing, filed by petitioner on December 4, 2009 in response to the Court's order of November 25, 2009.  Respondent has filed an objection to the court's use of this document, asserting that, under the AEDPA, the only documents properly reviewed are those that were before the state courts, and petitioner did not include the transcript with his state court petitions.  The state courts do not develop the factual record relevant to a California inmate's parole suitability.  Where, as here, the petition is directed not at the state court judgement, but rather, at a decision of the Board, the relevant factual findings for review are those of the Board.  The authorities cited by respondent limiting AEDPA review to the state court record are ones that concerned collateral challenges to state court convictions where the record was limited to the state court's factual findings.  *See Holland v. Jackson*, 542 U.S. 649, 652 (2004); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003); *Bell v. Cone*, 535 U.S. 685, 697 n.4.  In contrast, for example, the Supreme Court has held that on federal habeas review of a prison disciplinary board's decision to revoke good time credits, due process requires the prison board's findings to be "supported by some evidence in the record." *Hill*, 472 U.S. at 454.  In determining whether the some evidence standard was met, the Court reviewed the evidence that was before the disciplinary board. *Id*. at 456.  The transcript of petitioner's October 19, 2007 parole suitability hearing is properly considered on federal habeas corpus review.

1    As set forth in the discussion below, the due process standard in the parole

2 hearing context is minimally stringent.  The Board's decision must be upheld so long as there is

3 "some evidence" in the record that could support the conclusion reached.  In this case, despite

4 petitioner's assertions, that standard was met and he is not entitled to relief.

5                    IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

6    An application for writ of habeas corpus by a person in custody under judgment of

7 a state court can be granted only for violations of the Constitution or laws of the United States.

8 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

9 *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

10 This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

11 the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

12 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under

13 AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

14 state court proceedings unless the state court's adjudication of the claim:

15            (1) resulted in a decision that was contrary to, or involved an
             unreasonable application of, clearly established Federal law, as
16           determined by the Supreme Court of the United States; or

17            (2) resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the
18           State court proceeding.

19 28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

20 *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

21 The court will look to the last reasoned state court decision in determining whether the law

22 applied to a particular claim by the state courts was contrary to the law set forth in the cases of

23 the United States Supreme Court or whether an unreasonable application of such law has

24 occurred.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919

25 (2003).  If no reasoned state court opinion exists, an independent review of the record must be

26 conducted in order to determine whether the last state court decision was objectively

4

1  unreasonable.  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

2  V.  DISCUSSION

3  The Due Process Clause of the Fourteenth Amendment prohibits state action that

4  deprives a person of life, liberty, or property without due process of law.  A person alleging a due

5  process violation must first demonstrate that he or she was deprived of a protected liberty or

6  property interest, and then show that the procedures attendant upon the deprivation were not

7  constitutionally sufficient.  *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 459-60

8  (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

9  A protected liberty interest may arise from either the Due Process Clause itself or

10  from state laws.  *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The United States

11  Constitution does not, in and of itself, create a protected liberty interest in the receipt of a parole

12  date.  *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).  However, if a state's statutory parole

13  scheme uses mandatory language, it "creates a presumption that parole release will be granted"

14  when or unless certain designated findings are made, thereby giving rise to a constitutional

15  liberty interest.  *McQuillion*, 306 F.3d at 901 (*quoting Greenholtz v. Inmates of Nebraska Penal*,

16  442 U.S. 1, 12 (1979)).  The Ninth Circuit has conclusively determined that California state

17  prisoners who have been sentenced to prison with the possibility of parole have a clearly

18  established, constitutionally protected liberty interest in receipt of a parole release date.  *Irons v.*

19  *Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d

20  1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*,

21  306 F.3d at 903; and *Allen*, 482 U.S. at 377-78 (*quoting Greenholtz*, 442 U.S. at 12)).

22  The full panoply of rights afforded a defendant in a criminal proceeding is not

23  constitutionally mandated in the context of a parole proceeding.  *See Pedro v. Or. Parole Bd.*,

24  825 F.2d 1396, 1398-99 (9th Cir. 1987).  The Supreme Court has held that a parole board's

25  procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a

26  decision informing him of the reasons he did not qualify for parole.  *Greenholtz*, 442 U.S. at 16.

1    In addition, the Ninth Circuit has conclusively determined that Supreme Court law clearly

2    establishes that "some evidence" must support a parole decision. *Sass*, 461 F.3d at 1128-29;

3    *McQuillion*, 306 F.3d at 904.

4              Under the some evidence standard, a decision cannot be "without support" or

5    "arbitrary." *McQuillion*, 306 F.3d at 904 (*citing Superintendent v. Hill*, 472 U.S. 445, 457

6    (1985)); *Biggs*, 334 F.3d at 915.  It must have some indicia of reliability. *Id*.  The standard is

7    "minimally stringent," and a decision must be upheld if there is any evidence in the record that

8    could support the conclusion reached. *Powell v. Gomez*, 33 F.3d at 40 (*citing Cato v. Rushen*,

9    824 F.2d 703, 705 (9th Cir. 1987)); *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986).

10   Examination of the entire record is not required. *Id*.  The Supreme Court has specifically

11   directed reviewing courts not to assess the credibility of witnesses or re-weigh the evidence.

12   *Hill*, 472 U.S. at 455.  The only relevant question is whether there is *any* reliable evidence in the

13   record that could support the decision reached. *See Id*.; *Toussaint*, 801 F.2d at 1105.

14             In evaluating whether some evidence supported the Board's decision, the analysis

15   "is framed by the statutes and regulations governing parole suitability determinations in the

16   relevant state." *Irons*, 505 F.3d at 851.  This court is bound by California's construction of its

17   own parole suitability laws. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  The court "must

18   look to California law to determine the findings that are necessary to deem [a petitioner]

19   unsuitable for parole, and then must review the record to determine whether the state court

20   decision holding that these findings were supported by 'some evidence' [ ] constituted an

21   unreasonable application of the 'some evidence' principle." *Irons*, 505 F.3d at 851.

22             Title 15, Section 2402 of the California Code of Regulations sets forth various

23   factors to be considered by the Board in its parole suitability findings for murderers.  The

24   regulation is designed to guide the Board's assessment of whether the inmate poses "an

25   unreasonable risk of danger to society if released from prison," and thus whether he or she is

26   suitable for parole. *In re Lawrence*, 44 Cal.4th 1181, 1214, 1202 (2008).  The Board is directed

1  to consider all relevant, reliable information available regarding

2  the circumstances of the prisoner's social history; past and present
   mental state; past criminal history, including involvement in other
3  criminal misconduct which is reliably documented; the base and
   other commitment offenses, including behavior before, during and
4  after the crime; past and present attitude toward the crime; any
   conditions of treatment or control, including the use of special
5  conditions under which the prisoner may safely be released to the
   community; and any other information which bears on the
6  prisoner's suitability for release.

7  15 Cal. Code Regs. § 2402(b).  The regulation also lists several specific circumstances which

8  tend to show suitability or unsuitability for parole.  15 Cal. Code Regs. § 2402(c)-(d).  The

9  overriding concern is public safety and the focus is on the inmate's *current* dangerousness.  *In re*

10 *Lawrence*, 44 Cal. 4th at 1205.  Thus, the proper articulation of the standard of review is not

11 whether some evidence supports the reasons cited for denying parole, but whether some evidence

12 indicates that a parolee's release would unreasonably endanger public safety.  *In re Shaputis*, 44

13 Cal.4th 1241, 1254 (2008).  In other words, there must be some rational nexus between the facts

14 relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety.

15 *In re Lawrence*, 44 Cal. 4th at 1227.

16          Here, the Board determined that petitioner was not suitable for parole, in part,

17 because of the nature of his offense.  A prisoner's commitment offense can be a parole

18 unsuitability factor when committed in an especially heinous, atrocious or cruel manner.  15 Cal.

19 Code Regs. § 2402(c)(1).  The facts of a commitment offense can alone be a sufficient basis for

20 denying parole where they are particularly egregious.  *In re Rosenkrantz*, 29 Cal.4th 616, 682

21 (2002); s*ee also Biggs v. Terhune*, 334 F.3d 910, 913-16 (9th Cir. 2003); *Sass v. Cal. Bd. of*

22 *Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006); *Irons v. Carey*, 505 F.3d 846, 852-53 (9th

23 Cir. 2007).[2]  The Ninth Circuit has cautioned that repeated denial based solely on an inmate's

24
25          [2] In another case, *Hayward v. Marshall* (512 F.3d 536, 546-47 (9th Cir. 2008), a panel of
   the Ninth Circuit determined that under the "unusual circumstances" of that case, the unchanging
26 factor of the gravity of the petitioner's commitment offense did not, by itself, constitute some
   evidence supporting the governor's decision to reverse a parole grant on the basis that the

commitment offense "will at some point violate due process" where there is evidence of

rehabilitation and the prisoner has served the minimum term on his sentence.  S*ee also Irons*, 505

F.3d at 853-54.

In this case, the panel did not rely solely on petitioner's commitment offense, but

also appeared to find that his parole plans were insufficient:

> in terms of employment plans, we're really not sure what those are.
> And I think we had enough discussion where Mr. Rucker realizes
> how he needs to really firm up these parole plans and what else he
> can do in terms of getting a more viable backup plan.  Possibly
> transitional housing would be-- may want to consider moving that
> to the top of the list and also including a relapse prevention
> program in there and other areas that he can reach out into the
> community for community support in terms of setting up safety
> nets for him on the outside.

(BPHT at 103.)

It was also determined that petitioner had not sufficiently participated in beneficial

self-help programming.  While commending petitioner for his participation in Alcoholics

Anonymous in 2006, the panel indicated that he needed more documented evidence of substance

abuse programming in addition to other types of programming for anger and stress issues.

(BPHT at 102, 104.)  In conclusion, the presiding commissioner stated:

> we feel that this prisoner does need documented self-help in order
> to help face, discuss, understand, and cope with stress and anger in
> a nondestructive manner.  Until progress is made, we believe this
> prisoner continues to be unpredictable and a threat to others.

(BPHT at 103.)

Despite petitioner's argument to the contrary, there is some reliable evidence in

the record to support the panel's conclusion.  While the Board in this case did rely, in part, on the

unchanging nature of petitioner's commitment offense in finding him to be unsuitable for parole,

---

petitioner would pose a continuing danger to society.  However, on May 16, 2008, the Court of
Appeals vacated the decision in order to rehear it en banc. *Hayward v. Marshall*, 527 F.3d 797
(9th Cir. 2008).  Therefore, the panel decision in *Hayward* is no longer citable precedent.

1  this is not a case in which such reliance has resulted in a due process violation.  The Board

2  articulated a rational nexus between the egregious nature of petitioner's commitment offense and

3  the ultimate conclusion that he continues to be a threat to public safety.

4      The Board found that petitioner's commitment offense was especially egregious,

5  in part, because his motive was inexplicable or very trivial in relation to the offense he

6  committed.  (15 Cal. Code Regs. §2402(c)(1)(E).)  In order to fit the regulatory description for

7  this factor, a prisoner's motive must have been *more* trivial than those which conventionally

8  drive people to commit the offense in question.  *See In re Scott*, 119 Cal.App.4th 871, 893 (2004)

9  (reasoning that all motives for murder could reasonably be deemed "trivial").  The reasoning

10  behind this factor is that a person whose motive is unintelligible or cannot be explained may be

11  unusually unpredictable and dangerous.  *Id*.

12      In this case, the Board concluded that petitioner's motive appeared to have been

13  based on "pent up anger" on his own part and also somewhat retaliatory for the argument his

14  wife had gotten into with the victim.  (BPHT at 101.)  Petitioner concurred that the reasons for

15  the offense were anger and immaturity.  (BPHT at 27-28.)  Yet petitioner had just received a job

16  offer after several months of unemployment and he and the other occupants of the car were

17  supposed to be out celebrating and having a good time.  (BPHT at 27.)  Nevertheless, petitioner

18  reported that he was still feeling very angry about having been out of work for so long.  (BPHT at

19  27-28.)  He never knew what his wife and the victim were arguing about.  (BPHT at 22.)  Neither

20  he nor his wife had met the victim or Mr. Mortenson before the day of the offense.  (BPHT at

21  22.)  Pent up anger and retaliation for a verbal altercation regarding an unknown subject are

22  especially trivial reasons to commit first degree murder.  The conclusion that petitioner's motives

23  were more trivial than those which conventionally drive people to commit first degree murder is

24  not unreasonable.

25      Petitioner acknowledged that alcohol played a role in his offense.  (BPHT at 17-

26  18).  His file reflected that he had actively participated in NA and/or AA  throughout the 1990s

1   and again in 2005 and 2006, but was no longer attending meetings.  (BPHT at 46-47.)  Petitioner

2   reported that his current job assignment conflicted with the meeting times, and stated that he was

3   working the program steps on his own.  (BPHT at 47-49.)  The panel expressed concern

4   regarding petitioner's lack of current AA participation based on the fact that he was heavily

5   under the influence when he committed his offense, suggesting that he reconsider his priorities.

6   (BPTH at 48.)  The panel was also concerned about his lack of participation in any self-help

7   programming besides NA or AA.  (BPHT at 50.)

8           On this record, the Board could reasonably conclude that petitioner would still

9   pose a risk of current danger to the public, if released on parole.  His offense was completely

10  inexplicable, and committed at a time when he should have been happy, as he was out

11  celebrating a recent job offer.  His motive for the offense was extremely trivial, and this factor,

12  combined with his lack of demonstrated participation in self-help therapy as well as lack of

13  current participation in NA or AA, is some evidence that he still poses an unreasonable risk of

14  danger to the public if paroled.  The Board could reasonably conclude that he might still be

15  unpredictable or dangerous in free society.

16          Based on the nature of petitioner's commitment offense and his lack of program

17  participation including self-help and NA or AA, the decision of the Board to deny parole meets

18  the minimally stringent test for due process.  It is thus irrelevant for purposes of this review

19  whether the Board improperly relied on petitioner's parole plans as an unsuitability factor, or on

20  other additional factors, such as the opposition of the District Attorney and victim's family,[3] or

21

22

---

23          [3] During its reading of the decision, the panel noted that the District Attorney and some
    members of the victim's family were present and had stated their opposition to parole.  (BPHT at
24  103.)  Petitioner contends that such opposition is irrelevant to a determination of his suitability
    for parole.  Petitioner is correct that the opinions of the District Attorney and victim's relatives
25  have no bearing on an assessment of his current dangerousness.  In any event, it appears that the
    Board was simply noting the expressed opposition for the record; it did not appear that the Board
26  was relying on such opposition as a factor in its decision.

1  petitioner's criminal history and conduct in prison.[4]

2       The record contains with respect to an assessment of petitioner's current

3  dangerousness both positive and negative factors, which this court is precluded from re-

4  weighing.  Due process requires that the Board's decision be supported by some evidence in the

5  record and that modicum is present in this case.  The decision of the Butte County Superior Court

6  upholding the Board's denial of parole is not contrary to, or an unreasonable application of any

7  clearly established due process law, as determined by the Supreme Court.  Accordingly,

8  petitioner is not entitled to relief on his claim that the Board's decision finding him unsuitable for

9  parole violated his right to due process.

10  /////

11  /////

12  /////

13  /////

14  /////

15  /////

16  /////

17  /////

18  /////

19  /////

20  /////

21  /////

22

---

23       [4] The presiding commissioner noted when giving the Board's decision that petitioner had a minor criminal record and a disciplinary history in prison.  (BPHT at 102.)  It is not clear from the record whether the panel was actually relying on these factors to support its decision, or whether it was simply reciting that such information had been reviewed.  The extent of petitioner's criminal history consisted of a juvenile arrest for burglary of ice cream and an adult conviction for vandalism.  He had been free of any prison discipline for the past 15 years.  These factors do not appear to support the denial of parole under the relevant regulatory factors.  *See* 15 Cal. Code Regs. § 2402

1

VI.  CONCLUSION

2        For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

3   application for writ of habeas corpus be DENIED.

4        These findings and recommendations are submitted to the United States District

5   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

6   days after being served with these findings and recommendations, any party may file written

7   objections with the court and serve a copy on all parties.  Such a document should be captioned

8   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

9   shall be served and filed within ten days after service of the objections.  The parties are advised

10  that failure to file objections within the specified time may waive the right to appeal the District

11  Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

12  DATED: January 4, 2010

13

*Charlene H. Sorrentino*
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

12